# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANGELA E. O.,                          )
                                       )
              Plaintiff,            )
                                       )
              v.                    )         1:25CV274
                                       )
FRANK J. BISIGNANO,                    )
Commissioner of Social Security,       )
                                       )
              Defendant.[1]         )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Angela E. O., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI").  (Docket Entry 2.)  The Commissioner has filed the certified administrative record (Docket Entry 4 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 8 (Plaintiff's Brief); Docket Entry 9 (Commissioner's Brief); Docket Entry 10 (Plaintiff's Reply)).  For the reasons that follow, the Court should enter judgment for the Commissioner.

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute as Defendant in this suit. Neither the Court nor the parties need take further action to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for SSI on October 18, 2021 (Tr. 228-45), alleging a disability onset date of March 10, 2020 (see Tr. 239).[2] Upon denial of that application initially (Tr. 78-89, 107-16) and on reconsideration (Tr. 90-101, 118-23), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 124). Plaintiff, her attorney, and a vocational expert ("VE") attended a hearing (Tr. 56-72), after which the ALJ convened a supplemental hearing, attended by Plaintiff, a different attorney, and a different VE (Tr. 42-55). The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 14-37.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 203-04, 380-83), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since October 18, 2021, the application date.

2. [Plaintiff] has the following severe impairments: cervical degenerative disc disease; hypertension; obesity; lumbar spine sciatica; bilateral carpal tunnel syndrome (CTS); bipolar depressive disorder; adjustment

---

[2] Notwithstanding Plaintiff's alleged onset date of March 10, 2020 (see Tr. 239), Plaintiff lacked eligibility for SSI benefits until her application date of October 18, 2021 (see Tr. 228). See 20 C.F.R. § 416.202 (explaining that a claimant remains ineligible for SSI benefits until date he or she files SSI application); 20 C.F.R. § 416.501 (stating that a claimant may not receive SSI benefits for any period that predates first month he or she satisfies eligibility requirements, which cannot precede application date). Consistent with that fact, at her first hearing, Plaintiff amended her alleged onset date to October 18, 2021. (See Tr. 71.)

disorder; hepatitis C; polysubstance abuse; status post left ankle fracture with open reduction internal fixation (ORIF); left ventricle hypertrophy.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; sit for 6 hours; stand or walk for 6 hours; frequently reach, handle, finger, feel; occasionally stoop and kneel; frequently climb stairs and balance; no crouching or crawling; no exposure to dangerous heights or machinery; limited to understand, remember, and carry out simple instructions; no production pace work; occasional interaction with the general public, co-workers, and supervisors: and occasional changes in work setting.

. . .

5. [Plaintiff] is unable to perform any past relevant work.

. . .

9. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

10. . . . [Plaintiff] has not been under a disability, as defined in the [] Act, since October 18, 2021, the date the application was filed.

(Tr. 20-31 (bold font and internal parenthetical citations omitted).)

3

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there

4

is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[3]  "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines

---

[3]  The Act "comprises two disability benefits programs.  The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed.  [SSI] provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[4]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

### B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ failed to properly evaluate the mental health opinion of [consultative psychological examiner] Donna A. Mansour, M.A. [('MA Mansour'),]" and "the ALJ's reason for finding [MA Mansour's] mental health opinion 'minimally persuasive' based on lack of 'policy compliant language' was in error" (Docket Entry 8 at 3 (bold font and block formatting omitted); see also Docket Entry 10 at 1-3); and

2) "[t]he RFC's limitation for no crouching conflicts with the [Dictionary of Occupational Titles' ('DOT's')] requirement that a cleaner, housekeeping be able to crouch occasionally, and the conflict was not resolved, in contravention of [Social Security

---

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Ruling 00-4p, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p")]" (Docket Entry 8 at 10 (bold font and block formatting omitted); <u>see also</u> Docket Entry 10 at 3-4).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 9 at 3-12.)

### 1. Opinions of MA Mansour

In Plaintiff's first issue on review, she asserts that "[t]he ALJ failed to properly evaluate the mental health opinion of [MA Mansour,]" and "the ALJ's reason for finding [MA Mansour's] mental health opinion 'minimally persuasive' based on lack of 'policy compliant language' was in error." (Docket Entry 8 at 3 (bold font and block formatting omitted); <u>see also</u> Docket Entry 10 at 1-3.) More specifically, Plaintiff maintains that "this Court . . . found that if a medical opinion provides functional limitations arising from Plaintiff's impairments, then such opinion should not be dismissed for not being expressed in 'vocationally relevant terms,' or, in other words, 'policy compliant language[.]'" (Docket Entry 8 at 6-7 (quoting <u>Wesley v. Kijakazi</u>, No. 1:20CV364, 2021 WL 4129234, at *9 (M.D.N.C. Sept. 9, 2021) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. Oct. 14, 2021) (Tilley, S.J.), and citing <u>Gillis v. Colvin</u>, No. 1:14CV426, 2015 WL 4644777,

at *6 (M.D.N.C. Aug. 4, 2015) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Aug. 26, 2015) (Schroeder, J.); see also id. at 7 n.3 (citing Faircloth v. Saul, No. 5:20CV199, 2021 WL 1845531, at *7 (E.D.N.C. Apr. 19, 2021) (unpublished), recommendation adopted, 2021 WL 1841745 (E.D.N.C. May 7, 2021) (unpublished), and Anders v. Saul, No. 5:19CV568, 2020 WL 5629764, at *5 (E.D.N.C. Sept. 1, 2020) (unpublished), for same proposition).) According to Plaintiff, "[t]he opinion at issue here, that Plaintiff '[l]ikely could have issues on multiple stepped tasks,' points out specific functional limitations, that at least one circuit court, in a published decision, concluded precludes [Reasoning Development] Level 2 [('RDL 2')] jobs." (Id. at 7 (quoting Tr. 1192, and citing Rounds v. Commissioner of Soc. Sec. Admin., 807 F.3d 996, 1003 (9th Cir. 2015)).) Plaintiff contends that "[t]he ALJ's error was harmful, as two of the jobs given at [s]tep [f]ive [of the SEP], folding machine operator and garment sorter, require [RDL 2], i.e., the ability to follow detailed instructions." (Id. (citing Dictionary of Occupational Titles ("DOT"), No. 208.685-014 ("Folding-Machine Operator"), 1991 WL 671754 (G.P.O. 4th ed. rev. 1991), and DOT, No. 222.687-014 ("Garment Sorter"), 1991 WL 672131).)

Plaintiff additionally deems the ALJ's discounting of MA Mansour's opinion "problematic because, in the previous paragraph [of the ALJ's decision] when assessing [the state agency

10

psychological consultants'] 'low stress environment limitations'" (id. at 8 (quoting Tr. 87, 100)), "the ALJ found that[,] even though this language was, in the ALJ's words, 'undefined,' he translated this limitation into a limitation for 'occasional changes in a work setting'" (id. (quoting Tr. 29)). In Plaintiff's view, "[t]he ALJ cannot, without explanation, pick and choose which allegedly non-policy compliant limitations do or do not warrant an alternatively phrased, similar limitation." (Id. (citing Cogar v. Commissioner of Soc. Sec., No. 1:24CV1404, 2025 WL 1891858, at *4 (N.D. Ohio July 9, 2025) (unpublished)).) Further, Plaintiff faults the ALJ for "ma[king] no attempt to evaluate [MA Mansour's] opinion for consistency . . . with other evidence of record." (Id. at 9 (citing 20 C.F.R. § 416.920c(c)(2)).) For the reasons that follow, Plaintiff's contentions ultimately miss the mark.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 228-45)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence, see Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or accord special deference to treating source opinions. See 20 C.F.R. § 416.920c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

11

opinion(s) . . ., including those from [a claimant's] medical sources"). Instead, an ALJ must determine and "articulate in [the] . . . decision how <u>persuasive</u> [he or she] find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 416.920c(b) (emphasis added). Moreover, when a medical source provides more than one opinion, the ALJ can evaluate the persuasiveness of such opinions "together in a single analysis" and need not articulate how he or she considered those opinions "individually." 20 C.F.R. § 416.920c(b)(1).

In evaluating the persuasiveness of an opinion, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of an opinion. 20 C.F.R. § 416.920c(b)(2).[7] The ALJ must address the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion, 20 C.F.R. § 416.920c(c)(3)-(5) — <u>only</u> when the ALJ finds two or more opinions about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 416.920c(b)(3).

---

[7] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; <u>see also</u> 20 C.F.R. § 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; <u>see also</u> 20 C.F.R. § 416.920c(c)(2).

12

On October 31, 2022, MA Mansour conducted a consultative psychological examination of Plaintiff via "2-way realtime interactive audio and visual" connection (Tr. 1183), during which MA Mansour documented that Plaintiff displayed adequate hygiene and grooming (see Tr. 1184), and described Plaintiff as "friendly and cooperative" (id.), although noting that MA Mansour had a "very difficult" time "to get [Plaintiff] to share data[,]" and that "she d[id] not really provide specific examples" of her mental symptoms (id.). MA Mansour additionally observed that Plaintiff "fe[lt] that her inability to work [wa]s directly related to her physical problems." (Tr. 1185 (emphasis added).) MA Mansour recorded Plaintiff's daily activities as including bathing, dressing, feeding herself, cleaning, doing laundry, walking to the grocery store, shopping, watching television, and playing games on her phone, all reportedly without "issues" except needing a break when mopping. (Tr. 1187.) On mental status examination, MA Mansour noted that Plaintiff appeared alert, oriented, and pleasant, with an appropriate mood and affect, and normal speech and thoughts. (See Tr. 1187-88.) Although MA Mansour rated Plaintiff's recent memory and abstract thinking as normal, she noted "[p]ossible limitations" in immediate retention and recall, remote memory, fund of information, and calculations. (Tr. 1188-90 (emphasis added).) Additionally, MA Mansour rated Plaintiff's judgment and insight as poor based on her continued use of illegal substances, and

13

estimated that Plaintiff's intelligence fell in the low range. (See Tr. 1191.) MA Mansour diagnosed Plaintiff with bipolar depressive disorder, a history of PTSD, and rule-out personality disorder versus substance use disorder. (See id.) As a result of those impairments, MA Mansour opined that Plaintiff "could likely understand, retain, and follow instructions that are simple," "may be able to sustain attention to perform a simple repetitive task," "did have difficulty with manipulating information within short term memory and likely could have issues on multiple stepped tasks," "could likely relate to others," and "may have some issues tolerating stress and pressures in a work environment although she showed good persistence during [MA Mansour's] interview." (Tr. 1192 (emphasis added).)

The ALJ summarized some of MA Mansour's findings on mental status examination (see Tr. 28), recited MA Mansour's above-quoted opinions (see Tr. 29-30), and then found those opinions "mildly persuasive" as "not written in policy compliant language" (Tr. 30). The ALJ further noted that he "ha[d] taken into consideration M[A] Mansour's consultative exam report and conclusions in limiting [Plaintiff] to a range of unskilled work with occasional changes in the work setting, but also limited interaction with others based on the issues with mood noted in the medical evidence." (Id.) Plaintiff attacks that analysis on three grounds, none of which carries the day.

14

First, Plaintiff asserts that the ALJ erred by discounting MA Mansour's opinions as "'not written in policy compliant language'" (Docket Entry 8 at 6 (quoting Tr. 30)), because "[t]he opinion at issue here, that Plaintiff '[l]ikely could have issues on multiple stepped tasks,' points out specific functional limitations, that at least one circuit court, in a published decision, concluded precludes [RDL 2')] jobs" (id. at 7 (quoting Tr. 1192, and citing Rounds)). That argument fails because, although the ability to perform "multiple stepped tasks" (Tr. 1192) addresses a mental functional ability (see, e.g., Tr. 86-87 & 99-100 (state agency psychological consultants' mental RFC assessments including ratings for abilities to understand, remember, and carry out detailed instructions, and opining that Plaintiff remained capable of "[simple, routine, and repetitive tasks ('SRRTs')]")), MA Mansour's "likely could have issues" language (Tr. 1192 (emphasis added)) provides only a vague and ambiguous opinion regarding the degree of limitation Plaintiff would have in completing such tasks. That opinion does not affirmatively state that Plaintiff cannot perform multiple step tasks, does not provide clarity on how many steps in a task would cause "issues" for Plaintiff, and fails to explain the meaning of the term "issues." (Id.) Furthermore, that opinion does not rate Plaintiff's degree of limitation in completing multi-step tasks in policy-compliant terms, such as "not significantly limited," "moderately limited," and "markedly limited," see Program

15

Operations Manual System (POMS), § DI 24510.060B.2.c ("Mental Residual Functional Capacity Assessment") (setting forth five-point scale for assessing mental RFC used by state agency psychological consultants, including "Not Significantly Limited," "Moderately Limited," Markedly Limited," "No Evidence of Limitation in This Category," and "Not Ratable on Available Evidence").

Moreover, the cases Plaintiff cites do not aid her cause. (See Docket Entry 8 at 6 (citing Wesley and Gillis); see also id. at 7 n.3 (citing Faircloth and Anders).) In both Wesley and Gillis, the Court found no error arising out of the ALJ's discounting of a medical opinion as not expressed in vocationally relevant terms, see Wesley, 2021 WL 4129234, at *9; Gillis, 2015 WL 4644777, at *6, which in Wesley involved opinions "that [the p]laintiff was certainly likely not able physically to do the kind of work he used to do and could not return, for medical reasons, to his former work," Wesley, 2021 WL 4129234, at *9 (internal numbering, quotation marks, brackets, and parenthetical citations omitted), and in Gillis entailed an opinion that "[the p]laintiff's mental impairments adversely influenced his behavior," Gillis, 2015 WL 4644777, at *6 (internal quotation marks omitted). In each case, the Court found those opinions, like MA Mansour's opinion at issue, failed to provide "functional limitations" that the ALJ could translate into the RFC. See id. In contrast, Faircloth and Anders each involved the court rejecting the ALJ's discount of an

16

opinion as not "vocationally relevant," <u>Faircloth</u>, 2021 WL 1845531, at *7; <u>Anders</u>, 2020 WL 5629764, at *5; however, in <u>Faircloth</u>, the opinion "assessed [the c]laimant's ability to lift, carry, type, and file[,]" <u>Faircloth</u>, 2021 WL 1845531, at *7, as well as used specific weight limits and the term "frequent" to describe the degree of limitation, <u>see</u> <u>id.</u> at *6, and <u>Anders</u> involved an opinion "assess[ing the c]laimant's ability to sit, stand, walk, lift, carry, handle, feel or grasp, bend, stoop, crouch, and squat[,]" <u>Anders</u>, 2020 WL 5629764, at *5, and using agency-recognized terms like "mild" and "moderate" to explain the degree of limitation, <u>see</u> <u>id.</u> at *4. Thus, in those cases, the opinions clearly involved physical functions the state agency medical consultants and the ALJ must assess in fashioning the RFC and, unlike MA Mansour's opinion, used program-compliant language to rate the degree of limitation.

Accordingly, the ALJ did not err in discounting MA Mansour's opinion that Plaintiff "likely could have issues on multiple stepped tasks" (Tr. 1192) because it did not contain "policy compliant language" (Tr. 30). Furthermore, because the ALJ properly rejected that opinion, he labored under no obligation to preclude multiple-step tasks in the RFC, and Plaintiff has not shown that the two jobs adopted by the ALJ at step five of the SEP and rated at RDL 2, i.e., folding machine operator and garment sorter, conflict with the ALJ's mental RFC limiting Plaintiff to simple instructions, non-production pace work, occasional changes

17

in the work setting, and occasional interaction with others (see Tr. 24). See Lawrence v. Saul, 941 F.3d 140, 143-44 (4th Cir. 2019) (ruling that no apparent conflict existed between an RFC limiting a claimant to SRRTs and jobs rated at RDL 2).

Second, Plaintiff faults the ALJ for interpreting the state agency psychological consultants' "low stress environment" limitation (Tr. 87, 100), which the ALJ deemed "undefined" (Tr. 29), as a restriction to "occasional changes in a work setting" (id.), but failing to offer an alternative limitation for MA Mansour's "multiple stepped tasks" limitation (Tr. 1192). (Docket Entry 8 at 8 (citing Cogar).) That contention glosses over the fact that the ALJ stated that, notwithstanding the lack of policy compliant language, he "t[ook] into consideration M[A] Mansour's consultative exam report and conclusions in limiting [Plaintiff] to a range of unskilled work with occasional changes in the work setting." (Tr. 30 (emphasis added).) Moreover, the ALJ noted that, despite MA Mansour's opinion that Plaintiff "could likely relate to others" (id. (referencing Tr. 1192)), he "limited interaction with others based on the issues with mood noted in the medical evidence" (id.; see also Tr. 24 (RFC including significant limitation to only occasional interaction with coworkers, supervisors, and the general public)). Thus, not only did the ALJ attempt to fashion an appropriate mental RFC to accommodate MA Mansour's opinions, but he added a significant interaction

18

restriction to the mental RFC because he found that her opinions did not sufficiently capture Plaintiff's difficulties with mood evident in the record evidence. (See Tr. 30.)

Third, Plaintiff asserts that the ALJ failed to assess the consistency of MA Mansour's opinions with other evidence in the record, as required by 20 C.F.R. § 416.920c(c)(2). (Docket Entry 8 at 9.) As discussed above, the ALJ did address consistency by noting that MA Mansour's opinion that Plaintiff "could likely relate with others" (Tr. 1192) did not harmonize with other evidence in the record showing that Plaintiff had difficulties with her mood, and, thus, the ALJ added a restriction to occasional interaction with coworkers, supervisors, and the general public to the RFC (see Tr. 30; see also Tr. 24 (RFC finding)). Although the ALJ could have provided a more thorough analysis of the consistency of MA Mansour's opinions with the other evidence of record, the evaluation the ALJ did provide permits the Court to trace the path of his reasoning. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012) ("In conducting [its] review, [the court] should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but [the court] cannot insist on technical perfection.").

Put simply, Plaintiff's first issue on review fails as a matter of law.

19

## 2. Conflict Between the VE's Testimony and the <u>DOT</u>

Plaintiff's second and final assignment of error asserts that "[t]he RFC's limitation for no crouching conflicts with the [<u>DOT</u>]'s requirement that a cleaner, housekeeper be able to crouch occasionally, and the conflict was not resolved, in contravention of SSR 00-4p."  (Docket Entry 8 at 10 (bold font and block formatting omitted); <u>see also</u> Docket Entry 10 at 3-4.)  In particular, Plaintiff contends that "the ALJ crafted an RFC for Plaintiff that included a limitation for, *inter alia*, no crouching" (Docket Entry 8 at 11 (citing Tr. 24)), but notes that, "per the [<u>DOT</u>], the job of cleaner, housekeeping requires occasional crouching (exists up to 1/3 of the time)" (<u>id.</u> (internal citation omitted) (citing <u>DOT</u>, No. 323.687-014, 1991 WL 672783)).  Plaintiff additionally points out that "[t]he VE did not address th[at] conflict at the hearing" (<u>id.</u> (citing Tr. 52-53)), "and the ALJ d[id] not address th[at] conflict in his decision" (<u>id.</u> (citing Tr. 31)).  In Plaintiff's view, "[t]his error, when combined with the ALJ's numerous errors in addressing [MA] Mansour's . . . "multiple stepped tasks" limitation and that error's subsequent impact on the two[ RDL 2] jobs at [s]tep [f]ive [of the SEP] - folding machine operator and garment sorter - warrants remand."  (<u>Id.</u> (parenthetical material omitted).)  As explained more completely below, although Plaintiff has demonstrated that an apparent,

20

unresolved conflict existed, Plaintiff has not shown that such an error prejudiced her.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). Moreover, "an ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that an "apparent" conflict meant only an "obvious" one).[8]

---

[8] On December 6, 2024, the SSA issued Social Security Ruling 24-3p, Titles II and XVI: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions, 2024 WL 5256890 (Jan. 6, 2025) ("SSR 24-3p"), which "rescinds and replaces SSR 00-4p," id. at *1. Applicable to decisions on or after January 6, 2025, see id. at *2 & n.1, SSR 24-3p "will no longer require [ALJs] to identify and resolve conflicts between occupational information provided by . . . VEs and information in the [DOT,] id. at *2. In rescinding SSR 00-4p, the SSA noted that its "adjudicative
(continued...)

Here, Plaintiff has shown an apparent conflict existed between the VE's testimony that an individual limited to no crouching could perform the cleaner, housekeeping job (see Tr. 51-52), and the DOT's description of that job as involving occasional crouching, see DOT, No. 323.687-014 ("Cleaner, Housekeeping"), 1991 WL 672783. Moreover, as Plaintiff argues (see Docket Entry 8 at 11), the VE failed to address that conflict at the hearing (see Tr. 50-54), and the ALJ did not address it (much less resolve it) in his decision (see Tr. 30-31). However, as the discussion of Plaintiff's first issue on review makes clear, because the ALJ did not err in his evaluation of MA Mansour's "multiple stepped tasks" opinion (Tr. 1192), and, thus, had no obligation to preclude multi-step tasks in the RFC, Plaintiff has not shown that she lacks the RFC to perform the two remaining jobs adopted by the ALJ at step five of the SEP – folding machine operator and garment sorter (see Tr. 31). The VE presented unrebutted testimony that 58,000 folding machine operator jobs and 35,000 garment sorter jobs existed in the national economy (see Tr. 52), numbers that qualify as "significant" under binding precedent, see Guiton v. Colvin, 546 F. App'x 137, 142 (4th Cir.

_____

[8] (...continued)
experience since [it] issued SSR 00-04p has shown that requiring [ ALJs] . . . and VEs to identify and explain conflicts with the [DOT] is time consuming," and that, "[a]t the hearing level, the requirements of SSR 00-4p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified, and the requirements of SSR 00-4p might discourage . . . VEs from using occupational data in sources other than the [DOT]." Id. at *2. As the ALJ in this case issued his decision on March 5, 2024 (see Tr. 31), prior to the effective date of SSR 24-3p, the Court will apply SSR 00-4p to analyze Plaintiff's second assignment of error.

2013) (recognizing that, in <u>Hicks v. Califano</u>, 600 F.2d 1048 (4th Cir. 1979), the court found 110 jobs in the claimant's state to constitute a significant number of jobs).

In sum, Plaintiff's second and final issue on review fails to demonstrate prejudicial error.

### III.  CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 20, 2026

23